**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMERICAN FIDELITY ASSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. CIV-11-1284-D ) |
| THE BANK OF NEW YORK MELLON, | ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is the motion to dismiss [Doc. No. 35] of Defendant The Bank of New York Mellon ("Bank"), seeking to dismiss the Second Amended Complaint[1] pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff timely responded, and the Bank filed a reply.

I. Background:

In the Second Amended Complaint, Plaintiff asserts claims based on a violation of the Trust Indenture Act, breach of contract, breach of fiduciary duty, and negligence, including gross negligence. The claims result from Plaintiff's status as an institutional investor which purchased certain securities from Countrywide Financial Corporation ("Countrywide") and its related entities. The securities, identified as "certificates," were represented to Plaintiff and other investors as backed by mortgages. Plaintiff and other investors purportedly relied on representations by Countrywide in various prospectuses and related materials which stated that the mortgages were issued pursuant

---

[1] By Order [Doc. No. 24] of January 18, 2013, the Court granted the Bank's motion to dismiss the Complaint, but also granted Plaintiff leave to amend to correct the deficiencies noted in the Order. Plaintiff then amended, and filed the Second Amended Complaint.

to specific underwriting guidelines and were rated as investment-grade. In numerous investor lawsuits and a Securities and Exchange Commission ("SEC") action, Countrywide was accused of extensive fraud based on, *inter alia*, its knowingly false and misleading statements in the prospectuses and materials related to the certificates.

In connection with the investments, Pooling and Servicing Agreements ("PSAs") were executed by Countrywide or its affiliates. The PSAs provide, *inter alia,* for the creation of trusts for the purpose of holding the certificates for the benefit of Plaintiff and other investors. The Bank is the trustee of those trusts. In this lawsuit, Plaintiff alleges the Bank, as trustee, violated the Trust Indenture Act, 15 U.S.C. § 77aaa, *et seq.*. It also alleges that the Bank breached its contractual duties in the PSA provisions governing Plaintiff's investment. Additionally, Plaintiff alleges the Bank, as trustee, had fiduciary obligations to Plaintiff as an investor, that it breached those obligations, and that Plaintiff was damaged as a result. Plaintiff also alleges the Bank was negligent in carrying out its responsibilities and that its conduct amounts to gross negligence.

The Bank seeks dismissal of all claims asserted by Plaintiff, arguing that the allegations fail to state plausible claims for relief on any of the claims asserted.

II. Standard of review:

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To state a plausible claim, the Plaintiff has the burden to frame a complaint with enough factual matter to suggest that it is entitled to relief, and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Twombly* and its progeny do not eliminate the notice pleading standards of Fed. R. Civ. P. 8; thus, "detailed factual allegations" are not necessary to satisfy the plausibility requirements. *Iqbal*, 556 U.S. at 678. "The question to be decided is 'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Cameron v. Travelers Home and Marine Ins. Co.*, 2012 WL 5266172, at *1 (W.D. Okla. Oct. 23, 2012) (unpublished opinion) (quoting *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007)).

III.  Application:

A. Claim arising under the Trust Indenture Act:

The Bank initially argues that Plaintiff cannot state a plausible claim for relief based on an alleged violation of the Trust Indenture Act ("TIA") because the Act does not include within its scope certificates governed by a PSA. Even if the Act were construed to include such certificates, the Bank contends Plaintiff has failed to allege facts sufficient to bring its claim within the scope of the Act.

The Bank argues that the TIA does not apply to the certificates on which Plaintiff's claims are based because it expressly exempts from its coverage "(1) any security other than (A) a note, bond, debenture, or evidence of indebtedness, whether or not secured, or (B) a certificate of interest or participation in any such note, bond, debenture, or evidence of indebtedness...." 15 U.S.C. § 77ddd(a)(1). The Bank also argues that the certificates at issue here are exempt because the TIA

does not apply to "any certificate of interest or participation in two or more securities having substantially different rights and privileges." 15 U. S. C. § 77ddd(a)(2).[2]

The Bank acknowledges that its argument has been expressly rejected by at least two courts. In *Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago v. Bank of New York Mellon*, 914 F.Supp. 2d 422 (S.D.N.Y. 2012) ("*Mellon*"), the Honorable William H. Pauley III held that the PSA certificates are covered by the TIA because the certificates constitute debt securities rather than equity, and thus are included in the scope of TIA coverage. *Bank of New York Mellon,* 914 F.Supp. 2d at 429. The same conclusion was reached by the Honorable Katherine B. Forrest in *Policemen's Annuity and Benefit Fund of Chicago v. Bank of America, N.A.*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012) ("*Bank of America*").

In *Mellon,* the court discussed at some length the characteristics of PSAs governing securitization agreements, noting that the Second Circuit Court of Appeals had described them as "'similar to bond indentures in many respects.'" *Mellon*, 914 F.Supp. 2d at 428 (quoting *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010)). The court also noted that the certificates are "'ordinarily referred to as commercial mortgage-backed securities.'" *Id.* (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 200 (2d Cir. 2005) and citing *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 499 (7th Cir. 2010)). Citing the same authority, the court in *Bank of America* agreed that "certificates issued pursuant to PSAs like the ones at issue here are 'bonds' (not equity)." *Bank of America,* 907 F.Supp.2d at 556 (citations omitted).

---

[2] The statutory provision codifies the provisions of §§ 304(a)(1) and (2) of the TIA.

The Bank acknowledges that the arguments it asserts in this case in support of its contention that the TIA does not apply were also raised in both *Mellon* and *Bank of America,* and both courts rejected the arguments. In its brief, the Bank argues at length that the two decisions are simply wrong. In support, it does not cite court decisions supporting its argument, but discusses interpretative guidance published on the Securities and Exchange Commission ("SEC") website, and argues that the SEC's guidance suggests that the PSA certificates are exempt from the TIA. Additionally, the Bank cites articles from legal treatises expressing the opinion that PSA certificates are equity interests. *See* brief at pp. 10-11 and n. 5. However, the Court notes that essentially the same supporting material was presented in *Mellon,* and the court found that it was not bound by the SEC's interpretation or the opinions expressed in legal literature. *Mellon*, 914 F.Supp. 2d at 429. As the court observed, the statements on the SEC website "'do not warrant controlling deference because 'interpretations contained in policy statements, agency manuals, and enforcement guidelines . . .[are] beyond the *Chevron*[3] pale.'" *Id.* (quoting *United States v. Mead Corp.*, 433 U.S. 218, 234 (2001) (internal citations omitted). Thus, a court considering SEC guidelines and informal opinions affords those interpretations "'respect proportional to their power to persuade.'" *Id.* (quoting *Mead*, 533 U.S. at 235 (internal quotations omitted). The court in *Mellon* did not find the SEC website guidance persuasive because the SEC "supplies no analysis supporting its conclusion." *Id.* at 429.

The Bank notes that, following the decision in *Mellon*, the SEC amended its website by citing the decision and noting that the court held that the TIA applies to asset-backed securities in the form of certificates. *See* SEC website, www.sec.gov, at Section 202.01 (May 3, 2012). The SEC added

---

[3]*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

that it was reconsidering its guidance on this point in light of the *Mellon* decision. *Id.* However, as the Bank points out, the website has not yet been further amended.

The Court has carefully reviewed and considered the parties' arguments in light of the existing reported decisions interpreting the scope of the TIA and its application to certificates issued pursuant to PSAs. The Court agrees with the analyses and decisions issued in *Mellon* and *Bank of America*, and concludes that the certificates at issue in this case are covered by the TIA,[4] and the exemption in § 77ddd(a)(1) does not apply. Accordingly, the motion to dismiss on that basis is denied.

The Bank further argues, however, that the TIA exemption in § 77ddd(a)(2) also applies and renders the TIA inapplicable to the PSAs in this case. The exemption on which it relies provides that the TIA does not apply to "any certificate of interest or participation in two or more securities having substantially different rights and privileges." 15 U.S.C. §77ddd(a)(2). The Bank argues that the PSA certificates on which Plaintiff's claims are based involve multiple securities excluded from TIA coverage.

In its response brief, Plaintiff acknowledges that the TIA exempts certificates evidencing participation in two or more securities with substantially different rights and privileges and notes that the court in *Oklahoma Police Pension and Retirement System v. U.S. Bank National Ass'n*, 291 F.R.D. 47 (S.D.N.Y. 2013), held that the TIA did not apply to certificates issued pursuant to a PSA because they represented participation in "multiple underlying securities" having "substantially different rights and privileges." *Id.* at 65 n. 13.

---

[4] As the parties note, the decision in *Mellon* was certified for an interlocutory appeal. The issues on appeal include, *inter alia*, the scope of TIA coverage. *See* Order, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) (unpublished). The appeal remains pending in the Second Circuit Court of Appeals, and no decision has been issued as of the date of this Order.

As Plaintiff notes, however, the applicability of the §77ddd(a)(2) exemption involving multiple securities was also considered by Judge Forrest in her decision addressing the defendant's motion to dismiss a second amended complaint in *Bank of America. See Policemen's Annuity and Benefit Fund of Chicago v. Bank of America, N.A.,* 943 F.Supp.2d 428 (S.D.N.Y. 2013). In seeking dismissal of the second amended complaint, the defendant raised the argument, asserted by the Bank in this case, that the TIA exemption set out in § 77ddd(a)(2) applied to the PSA certificates *Id.* at 438.

Judge Forrest rejected that argument, holding that the PSAs reflected a "a pool of mortgages" grouped into "a single security with a single principal balance." *Id.* at 439. That there were "numerous mortgages with different terms underlying the ultimate obligation," did not alter the fact that there was "a single outstanding balance amount and a single type of obligation." *Id.*

Plaintiff urges the Court to follow this decision because the certificates on which its claims are based involve a single security with a single principal balance, thus creating a single obligation. Thus, Plaintiff contends the certificates at issue here represent the same structure as those considered in *Bank of America.* Plaintiff contends this is demonstrated by Exhibit 2 to the Second Amended Complaint.

The Court has reviewed the legal arguments and has considered Exhibit 2 and the remaining exhibits incorporated by Plaintiff in its Second Amended Complaint. Having done so, the Court finds that the allegations and the documents incorporated by reference in the Second Amended Complaint are sufficient to allege plausible facts that the certificates at issue in this case contain a single interest

in a security.[5]  The Court will not, at the motion to dismiss stage, consider whether the evidence will ultimately support that conclusion.  The only issue to be determined regarding the motion to dismiss is whether Plaintiff has alleged sufficient facts to state a plausible claim for relief under the TIA.  The Court finds that it has satisfied that burden, and denies the motion to dismiss on this basis.

The Bank also argues, however, that even if the TIA applies, Plaintiff's allegations are insufficient to state a plausible claim for relief under any of the specific bases which Plaintiff contends constitute a violation of the TIA.  The Bank's argument in this regard challenges the legal basis for Plaintiff's claims of violations.  It contends that the provisions on which Plaintiff relies cannot support the violations it cites.

To some extent, the Bank's arguments involve an analysis of the terms of the PSAs in light of the TIA.  However, the Bank's arguments are more properly characterized as urging the Court to find that the facts and circumstances underlying Plaintiff's claims are insufficient to show a violation of the TIA.  The Court finds these contentions focus primarily on whether Plaintiff will be able to present evidence sufficient to support its claimed violations, not whether the allegation in the Second Amended Complaint are sufficient to state a plausible claim for relief.  The Court concludes that the issues raised by the Bank are more properly considered at a later stage of the proceedings, and it finds the allegations sufficient to state a plausible claim for relief on Plaintiff's TIA claims.  The motion to dismiss is denied as to this contention.

---

[5]When considering a Rule 12(b)(6) motion to dismiss, the Court may consider material submitted as an exhibit to a pleading or incorporated or referenced in the complaint, as well as documents relied upon by a plaintiff as an integral basis for the claims.  *See, e.g., Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

B. Breach of contract claims:

Count II of the Second Amended Complaint asserts a claim for breach of contract. Plaintiff alleges that the Bank breached §§ 8.01 and 10.05 of the PSAs. Second Amended Complaint at ¶¶ 65-72.[6] In summary, Plaintiff contends that these provisions create a contractual duty to provide information to Plaintiff and other institutional investors and/or to take certain actions regarding Countrywide. It alleges that the Bank breached §8.01 by failing to examine the statements provided to it by Countrywide pursuant to the PSAs. Plaintiff also alleges the Bank breached § 10.05 by failing to disclose to the credit rating agencies: a) the occurrence of an Event of Default that had not been cured, and b) the repurchase or substitution of mortgage loans pursuant to § 2.03 of the PSAs. It also alleges that § 10.05 was breached by the Bank's failure to provide full and accurate information, more specifically set out at ¶ 69 of the Second Amended Complaint. Plaintiff alleges that these purported breaches by the Bank resulted in damages to Plaintiff and other investors because the Bank's compliance with its duties would have avoided or reduced the losses resulting from Countrywide's improper conduct.

To state a claim for relief based on breach of contract under New York law,[7] Plaintiff must allege facts to show (1) an agreement between the plaintiff and the defendant; (2) the plaintiff's performance of the agreement; (3) the defendant's breach of the agreement; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *W2007 Monday 230 Park Mezz II, LLC v. Landesbank Baden-Wuerttemberg*, 2013 WL 135548, at *4 (N.Y.S. 2d. Jan. 10, 2013)

---

[6]Count II of the Second Amended Complaint also expressly incorporates the previously pled specific factual allegations therein. Second Amended Complaint at ¶ 64.

[7]The parties agree that New York law governs the breach of contract, negligence, and fiduciary duty claims in this case.

9

(unpublished opinion); *see also  JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 893 N.Y.S. 2d 237 (2010).

In the Second Amended Complaint, Plaintiff has alleged an agreement which it performed, and it alleges the Bank breached the agreement.  However, the Bank argues Plaintiff has not alleged sufficient facts to show that the Bank was contractually obligated to take the specific actions on which Plaintiff relies, nor has it alleged facts to show that it incurred damages as a result of the Bank's failure to act.  Instead, as it argued in seeking dismissal of the Complaint, the Bank contends Plaintiff's allegations are conclusory and cannot satisfy the *Twombly* standards.  The Bank also contends, as it argued in seeking dismissal of the Complaint, that the PSAs impose no contractual duty to take the actions which Plaintiff alleges were required of the Bank.  Finally, the Bank reasserts its argument that Plaintiff has failed to allege loss causation.

Having examined the allegations in the Second Amended Complaint in light of the Bank's arguments, the Court concludes that they contain sufficient facts to withstand dismissal.  Plaintiff has added sufficient detail to its factual allegations to avoid the Court's finding, in the Order granting dismissal of the original Complaint, that the allegations were vague and conclusory.   The balance of the Bank's contentions are directed at the substantive merits of Plaintiff's allegations rather than their factual sufficiency at the pleading stage.  While these issues will ultimately involve the Court's interpretation of the contractual agreements on which Plaintiff relies, the Court finds that such determination should be reserved for a later stage of this litigation.

With respect to the contention that Plaintiff has failed to allege sufficient facts to show loss causation, the Second Amended Complaint identifies a loss amount and alleges that this loss was

caused by the Bank's alleged breaches. While Plaintiff's ability to prove this essential contention may be in question, that determination cannot reasonably be made at this stage of the litigation.

Accordingly, the Court denies the motion to dismiss the breach of contract claims in Count II of the Second Amended Complaint.

C. Breach of fiduciary duty claim:

Count III of the Second Amended Complaint alleges the Bank, as Trustee, had fiduciary obligations to Plaintiff, including the duty of good faith and loyalty in the performance of its duties, and the Bank breached these fiduciary obligations. It alleges the Bank did so by failing to perform specific non-discretionary, ministerial tasks, and it identifies these tasks at ¶¶ 75(a) and (b) of the Second Amended Complaint. Plaintiff alleges that it was damaged as a result of the Bank's failure to perform the non-discretionary, ministerial tasks on which Plaintiff relies in an amount exceeding $9,730,000. Second Amended Complaint at ¶¶ 76-77.

The Bank seeks dismissal of this claim, arguing that the claim is foreclosed by New York law. More specifically, the Bank argues that its rights and obligations are limited to those expressly set out in the PSAs.

As the Court noted in the Order addressing the Bank's motion to dismiss the original Complaint filed herein, the Bank is correct in its assertion that a fiduciary duty requires the existence of a higher level of trust than that created by a contractual obligation:

> A fiduciary duty is a relationship of higher trust that arises out of an obligation to act for or give advice to another upon matters within the scope of the relation. *EBCI, Inc. v. Goldman Sachs*, 5 NY3d 11, 31 (2005). A fiduciary relationship is fact specific and grounded in a higher level of trust than normally is present in the marketplace in an arms-length business transaction. *Id.; RNK Capital LLC v. Natsource*, 76 AD3d 840 (1st Dept 2010). Where the parties have entered into a contract, courts look to the agreement to find the nexus of the parties

> relationship and should not ordinarily transport the parties to the realm of higher duty. *ECBI*, *supra*.

*Facie Libre Associates I, LLC v. Secondmarket Holdings, Inc.*, 2012 WL 3490344, at *4 (N.Y. Sup. Ct. Aug. 10, 2012) (unpublished opinion).

However, New York also recognizes that "[t]he same conduct may constitute both a breach of contract and a breach of fiduciary duty." *Hamlet on Olde Oyster Bay Home Owners Ass'n, Inc. v. Holiday Organization, Inc.*, 2006 WL 1982603, at *13 (N.Y. Sup. July 7, 2006) (citing *Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 729 N.Y.S.2d 142 (2001) and *Davis v. Dime Savings Bank of New York*, 557 N.Y.S.2d 775 (1990)). Furthermore, "[p]arties may plead alternative and contradictory theories of liability." *Hamlet*, 2006 WL 1982603, at *13 (citing *Raglan Realty Corp. v. Tudor Hotel Corp.*, 540 N.Y.S.2d 240 (1989)). "The fact that the allegations underlying the breach of fiduciary duty claim may overlap with the breach of contract claim does not require the dismissal of the breach of fiduciary duty claim." *Prohealth Care Associates, LLP v. April*, 2004 WL 1872915, at *5 (N.Y. Sup. Aug. 18, 2004) (citations omitted). Instead, the Court must determine whether the facts alleged sufficiently state the elements of a breach of fiduciary duty. *Hamlet*, 2006 WL 1982603, at *13. A "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Airey v. Remmele*, 953 N.Y.S. 2d 822, 829 n. 3 (N.Y. Sup. 2012) (citations omitted).

The Court concludes that Plaintiff's factual allegations are sufficient to state a plausible claim for relief based on a breach of a fiduciary duty. Although proof of a fiduciary relationship may impose on Plaintiff a "heavy burden," *see Airey,* 953 N.Y.S. 2d at 829 n. 3, whether Plaintiff can satisfy that burden is not the issue to be determined in ruling on the Bank's Rule 12(b)(6) motion.

The Court finds Plaintiff's contentions sufficiently allege facts which could support the initial elements of its breach of fiduciary duty claim.

With regard to the Bank's contention that Plaintiff has not adequately pled loss causation, the Court finds that the Second Amended Complaint contains sufficient factual detail to avoid dismissal. Whether the claimed loss was attributable to any breach by the Bank is a factual question which is not properly adjudicated in ruling on a Rule 12(b)(6) motion. The motion to dismiss the Count III claim in the Second Amended Complaint is denied.

D.  Negligence and gross negligence claims:

With respect to the Count IV allegations of negligence, Plaintiff has pled facts to show that the Bank owed it a duty which was breached and that it incurred resulting damages. These are the essential elements of a negligence claim under New York law. *See, e.g., Ivory v. International Business Machines Corp.*, 2012 WL 5680180, at *3 (N.Y. Sup. Nov. 15, 2012) (unpublished opinion). Plaintiff has also factually alleged that the Bank's conduct was sufficiently reckless to constitute gross negligence. Second Amended Complaint at ¶¶ 79-82.

As the Court concluded in ruling on the Bank's motion to dismiss these claims in the original Complaint, the factual allegations are sufficient to state a plausible claim for relief based on negligence and to raise the issue of gross negligence. The Second Amended Complaint adds some additional factual detail to the Count IV claim and incorporates all prior allegations by reference. The Court finds the allegations sufficient to avoid dismissal.

With respect to the Bank's contention that Plaintiff failed to adequately allege loss causation, the Court agreed in its ruling on the Complaint that Plaintiff's allegations were conclusory in this regard. Leave to amend was authorized to correct that deficiency. The Court concludes that the

Second Amended Complaint contains sufficient factual allegations regarding the loss allegedly caused by the Bank's purported negligence. As with the other claims, whether Plaintiff can ultimately prove loss causation is a matter to be determined by the evidence, and the issue is not properly adjudicated in a Rule 12(b)(6) motion. Accordingly, the motion to dismiss Count IV is denied.

IV.  Conclusion:

For the foregoing reasons, the Bank's motion to dismiss the Second Amended Complaint [Doc. No. 35] is DENIED. The Bank is directed to file its Answer to the Second Amended Complaint according to the deadlines set forth in the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

IT IS SO ORDERED this 26th day of December, 2013.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE